IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EDMOND KING,                           §
                                       §
              Plaintiff,               §
                                       §
v.                                     §
                                       §    CIVIL ACTION NO. H-10-0580
BIGLER LP, ALBEMARLE                   §
CORPORATION, THE SHAW GROUP,           §
INC., SHAW MAINTENANCE, INC.,          §
and SHAW CONSTRUCTORS, INC.,           §
                                       §
              Defendants.              §

**MEMORANDUM OPINION AND ORDER**

Edmond King brings this action against Bigler LP ("Bigler");
Albemarle Corporation ("Albemarle"); and The Shaw Group, Inc., Shaw
Maintenance, Inc., and Shaw Constructors, Inc. (collectively, "the
Shaw defendants"), alleging negligence for injuries that King
sustained when the tanker truck he was driving was struck by a
train.

Pending before the court are Albemarle Corporation's Motion
for Summary Judgment (Docket Entry No. 53); Albemarle Corporation's
Motion for Attorney's Fees and Costs (Docket Entry No. 54);
Defendant Albemarle Corporation's Rule 12(b)(6) Motion to Dismiss
and Answer to Plaintiff's Fourth Amended Original Complaint (Docket
Entry No. 55); Defendant Bigler LP's Traditional and No-Evidence
Motion for Summary Judgment (Docket Entry No. 70); Plaintiff's
Motion in Opposition of Bigler LP's Untimely Original Answer and
Motion to Strike (Docket Entry No. 82); Defendant Bigler L.P.'s

Motion for Leave to File Original Answer and Response to Plaintiff's Motion to Strike (Docket Entry No. 84); and Bigler's Motion for Continuance (Docket Entry No. 85). For the reasons explained below, Albemarle's motion for summary judgment will be granted, Albemarle's motion for attorney's fees and costs will be denied, Albemarle's motion to dismiss will be denied as moot, Bigler's motion for summary judgment will be granted in part and denied in part, Bigler's motions for continuance and for leave to file an answer will be granted, and King's motion to strike will be denied.

## I.  Factual and Procedural Background

**A.  Underlying Facts**

On August 21, 2008, a train collided with an eighteen-wheel tanker truck at a chemical plant in Pasadena, Texas, knocking the truck onto its side and causing injuries to the truck's driver, Edmond King. The plant, operated by Bigler, is situated on a piece of property that is also home to two other chemical plants, one operated by Albemarle and the other by Ethyl Corporation.[1]  King was delivering a load of liquefied petroleum gas ("LPG") to Bigler.[2]  The collision occurred after King had unloaded the LPG

---

[1]Oral Deposition of Edmond King, Nov. 1, 2010 ("King's Deposition"), Exhibit B to Albemarle Corporation's Motion for Summary Judgment ("Albemarle's Motion for Summary Judgment"), Docket Entry No. 53, pp. 56:24–57:3.

[2]Id. at 57:18–22.

and as he was driving across the railroad tracks to weigh out at Bigler's weigh station.[3]  The train was allegedly being operated by one of the Shaw defendants.[4]

King was familiar with the layout of Bigler's plant.  He had delivered LPG to the plant on multiple occasions, including eight deliveries during the week-and-a-half leading up to the accident.[5] For each delivery, King would enter the main security gate, drive through the Albemarle plant to the Bigler plant, weigh in, unload the LPG, and weigh out.[6]  Completing this process required King to skillfully maneuver around tight corners and through narrow roads, and to cross over a set of railroad tracks four times before exiting the plant.[7]

King had thirteen years of experience making deliveries to various chemical plants and had encountered railroad tracks at almost all of these plants.[8]  King knew from his training that he was required to follow certain procedures when he approached a railroad crossing, such as stopping fifteen feet before the crossing, turning off all radios, rolling down the truck's windows,

---

[3]See id. at 110:1-125:25.

[4]Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 10.

[5]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 59:16-24, 72:6-24.

[6]Id. at 90:22-25, 91:22-94:2.

[7]See id. at 90:22-94:2, 101:10-108:7.

[8]Id. at 177:7-178:3.

-3-

and staying in the same gear while crossing over the tracks.[9] He knew that because he was carrying a hazardous material he was required to follow these procedures when approaching any railroad crossing, regardless of whether a train was nearby or whether he was inside or outside of a chemical plant.[10] It was King's regular practice to follow these procedures.[11] When King first entered Bigler's plant he observed that at least one railcar was parked on the tracks and visible from the railroad crossing.[12]

The railroad tracks at Bigler's plant run north and south, and, at essentially a perpendicular angle, they cross Seventh Street, on which both the load rack (used for unloading the LPG) and the weigh station (used for weighing in and out) are located.[13] A cluster of pipes, which according to King is called a "pipe rack," is situated just east of the tracks and runs parallel to the tracks.[14] The pipes go up and over Seventh Street, creating a large rectangular frame that allows tanker trucks to drive underneath the pipes.[15] On the west side of the railroad tracks — also running

---

[9]Id. at 67:11-69:22.

[10]Id. at 68:1-70:13.

[11]Id. at 68:17-69:6.

[12]See id. at 18:1-122:25.

[13]See id. at 104:24-111:23; see also Map of Bigler's Plant, Exhibit 3 to King's Deposition, id.

[14]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 117:5-25.

[15]See id.

parallel to the tracks — is Ethyl Street.[16]  When the accident occurred King had already turned onto Seventh Street and crossed over the railroad tracks twice, to weigh in and to unload, without incident.  But to get to the weigh station to weigh out King had to make a right turn from Ethyl Street onto Seventh Street and cross the railroad tracks a third time.[17]

As King approached the railroad tracks he stopped within fifteen feet of the tracks with his radios off and his windows down, and he looked both ways.[18]  King testified at his deposition that he had a clear view of the railroad tracks, both to the north and to the south, and that there was nothing blocking his view.[19]  When King looked south — out his right window — he saw a railcar on the tracks, but based on his earlier observations he thought the railcar was parked and not moving.[20]  He did not hear the sound of the train approaching.[21]  The train crashed into the side of King's tanker truck, which caused King's head to slam into the driver's side door, knocking him unconscious.[22]  King was admitted to a Houston hospital for approximately twenty-four hours, and after he

---

[16]Id.

[17]Id. at 107:2-108:7.

[18]Id. at 113:9-21, 120:11-121:9.

[19]Id. at 121:8-20, 122:8-123:24.

[20]Id. at 118:21-121:7.

[21]Id. at 120:16-20.

[22]Id. at 125:5-9.

was released he regularly attended physical-therapy sessions and eventually had to undergo back surgery.[23]

## B.   Procedural History

King filed this action in state court on January 15, 2010, and Albemarle removed the action on the basis of diversity jurisdiction.[24]   King alleges that Bigler and Albemarle acted negligently by their "acts, wrongs, and/or omissions":

A.   In failing to maintain an adequate and/or secure premises to protect operator(s) of commercial vehicles;

B.   In failing to provide a proper person to be on the lookout for potential collisions;

C.   In failing to adequately warn of the movement of the train;

D.   In failing to maintain a clear sightline of the railroad tracks at the crossing; and

E.   In committing various acts and/or omissions of negligence, both statutory and common law, to be specified in detail at the time of trial.[25]

King alleges that Albemarle and Bigler's conduct was the proximate cause of the collision and resulting damages.[26]

On November 5, 2010, Albemarle moved for summary judgment, arguing that the summary-judgment evidence demonstrates that King

---

[23]Id. at 145:2-153:22.

[24]Notice of Removal, Docket Entry No. 1, ¶ 1.

[25]Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 13.   King also alleges negligence against the Shaw defendants for negligently operating the train.   Id. ¶ 12.

[26]Id. ¶ 14.

had an unobstructed view of the railroad tracks and that it did not owe King a duty to provide the types of warnings described in King's complaint.[27]  Albemarle further argues that even if there was an obstruction it was not "emanating from Albemarle's premises."[28] In addition, Albemarle moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that it had no obligation to provide additional warnings at the railroad crossing.[29]   On January 7, 2011, Bigler also moved for summary judgment, arguing that the summary-judgment evidence demonstrates that Bigler did not owe a duty to King and that any negligent conduct was King's rather than Bigler's.[30]  Bigler also argues that there is no evidence that Bigler was the owner, lessee, occupier, or operator of the premises where the accident occurred or that it owed King a duty to provide warnings for the railroad crossing beyond those already present.[31] King responds that there is a genuine issue of material fact as to

---

[27]Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 3-6.

[28]Albemarle Corporation's Reply to Plaintiff's Response and Supporting Brief to Albemarle Corporation's Motion for Summary Judgment ("Albemarle's Summary-Judgment Reply"), Docket Entry No. 63, p. 5.

[29]See Defendant Albemarle Corporation's Rule 12(b)(6) Motion to Dismiss and Answer to Plaintiff's Fourth Amended Original Complaint ("Albemarle's Motion to Dismiss"), Docket Entry No. 55, pp. 1-2.

[30]Defendant Bigler LP's Traditional and No-Evidence Motion for Summary Judgment ("Bigler's Motion for Summary Judgment"), Docket Entry No. 70, ¶ 5.

[31]Id. ¶ 6.

-7-

each element of negligence and that King's negligence, if any, does not absolve the plant operators of their negligence.[32]

## II.  **Motions for Summary Judgment**

### A.  **Applicable Law**

#### 1.  Summary-Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(a).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate

---

[32]See Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, Document 1 to Plaintiff's Response to Defendant, Albemarle Corporation's Motion for Summary Judgment ("King's Response to Albemarle's Summary-Judgment Motion"), Docket Entry No. 58, pp. 3-7; Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, Document 1 to Plaintiff's Response to Defendant, Bigler LP's Motion for Summary Judgment ("King's Response to Bigler's Summary-Judgment Motion"), Docket Entry No. 74, pp. 3-5.

the elements of the nonmovant's case." Little v. Liquid Air Corp.,
37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex,
106 S. Ct. at 2553-54). If the moving party meets this burden,
Rule 56(c) requires the nonmovant to show that specific facts exist
over which there is a genuine issue for trial. Id. (citing
Celotex, 106 S. Ct. at 2553-54). A party asserting that a fact is
genuinely disputed must support the assertion by either (1) citing
to particular parts of materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, admissions, and interrogatory answers;
or (2) showing that the materials cited do not establish the
absence or presence of a genuine dispute, or that an adverse party
cannot produce admissible evidence to support the fact.
Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing the evidence "the
court must draw all reasonable inferences in favor of the nonmoving
party, and it may not make credibility determinations or weigh the
evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133,
120 S. Ct. 2097, 2110 (2000).

## 2. Negligence

In Texas[33] a cause of action based on negligence requires proof
of three elements: (1) the existence of a duty, (2) breach of that

---

[33]In cases where jurisdiction is based on diversity the court
applies the substantive law of the forum state — here, Texas.
Fisher v. Miocene Oil and Gas Ltd., 335 Fed. Appx. 483, 486 (5th
Cir. 2009) (unreported).

duty, and (3) damages proximately caused by the breach.  W. Invs.,
Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Greater Hous.
Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  Duty is
the threshold inquiry in a negligence case.  Phillips, 801 S.W.2d
at 525 (citing El Chico Corp. v. Poole, 732 S.W.2d 306, 311
(Tex. 1987)).  Whether a duty exists is a question of law reserved
for the court.  It generally turns "on a legal analysis balancing
a number of factors, including the risk, foreseeability, and
likelihood of injury, and the consequences of placing the burden on
the defendant."  Del Lago Partners, Inc. v. Smith, 307 S.W.3d 762,
767 (Tex. 2010) (citing Gen. Elec. Co. v. Moritz, 257 S.W.3d 211,
217-18 (Tex. 2008)).  In some circumstances, however, the existence
and scope of a duty may be determined by the relationship that
existed between the parties, such as the relationship between a
landowner and an invitee.  See Phillips, 801 S.W.2d at 525.

King alleges that Albemarle and Bigler, as owners, operators,
occupiers, or lessees of the premises, failed to keep the premises
safe and failed to adequately warn visiting tanker-truck drivers
about approaching trains.[34]  "Premises liability is a special form
of negligence where the duty owed to the plaintiff depends upon the
status of the plaintiff at the time the incident occurred."[35]

---

[34]Plaintiff's Fourth Amended Original Complaint, Docket Entry
No. 51, ¶ 13.

[35]With respect to landowners, Texas common law recognizes both
"negligent-activity and premises-liability theories of liability."
(continued...)

-10-

<u>Urena</u>, 162 S.W.3d at 550.   Since King was delivering LPG to the plant on behalf of his employer, he was an invitee.   <u>See</u> <u>Am. Indus.</u> <u>Life Ins. Co. v. Ruvalcaba</u>, 64 S.W.3d 126, 135 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("A person is an invitee only where the owner or occupier invites the person to enter the premises and where the person's visit involves at least a potential pecuniary profit to the owner or occupier.") (citing <u>Olivier v. Snowden</u>, 426 S.W.2d 545, 550 (Tex. 1968)).

"[G]enerally, a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known."   <u>Del Lago</u>, 307 S.W.3d at 767.[36]   A property

----

[35](...continued)
<u>Del Lago</u>, 307 S.W.3d at 775.   "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the [plaintiff's] injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe."   <u>Id.</u> at 776 (citing <u>Timberwalk Apartments, Partners, Inc. v. Cain</u>, 972 S.W.2d 749, 753 (Tex. 1998) (internal citations omitted).   King does not allege a particular theory of premises liability.   Because King's causes of action against Albemarle and Bigler arise from the allegedly unsafe conditions on the property, however, the court will examine the evidence under the premises-liability standard rather than the negligent-activity standard.   <u>See</u> <u>id.</u> (concluding that the case was properly submitted to the jury as a premises-liability case because the plaintiff "primarily complained of [the defendant's] nonfeasance — its failure to remedy an unreasonably dangerous condition").

[36]In <u>TXI Operations, L.P. v. Perry</u>, 278 S.W.3d 763 (Tex. 2009), the Texas Supreme Court had described the duty as requiring the premises owner to "either adequately warn of the dangerous condition or make the condition reasonably safe."   <u>Id.</u> at 764-65. The <u>Del Lago</u> majority stated, however, that the standard set out in
(continued...)

owner's liability "to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition, not on whether a specific set of facts or a specific breach of duty is established." Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983).

To prevail on a premises-liability claim an invitee must prove that (1) the owner, occupier, or operator of the premises had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner, occupier, or operator did not exercise reasonable care to reduce or eliminate the risk; and (4) the failure to use such care proximately caused the plaintiff's injuries.[37] Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992).

---

[36](...continued)
TXI Operations does not require plaintiffs to prove that both the landowner's failure to warn and failure to make the premises safe caused their injuries, noting that "in some circumstances no warning can adequately substitute for taking reasonably prudent steps to make the premises safe." Del Lago, 307 S.W.3d at 771 n.32.

[37]Albemarle and King argue back and forth about whether the railroad crossing at issue was "extra hazardous," which in this instance would have required the operator of the railroad to use "extraordinary means to warn travelers along the road." Rankin v. Union Pac. R.R. Co., 319 S.W.3d 58, 63-64 (Tex. App.—San Antonio 2010, no pet.). King does not contend, however, that either Albemarle or Bigler is a railroad company or that either operated the railway at issue. In fact, King specifically alleges that the Shaw defendants owned or operated the train that collided with King's truck. Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 10. Without evidence connecting Albemarle or Bigler to the operation of the railway, the court will examine the allegations and evidence against them solely under the premises-liability framework.

-12-

**B.   Analysis With Respect to Albemarle**

To prevail on a premises-liability claim a plaintiff must first "prove that the defendant possessed — that is, owned, occupied, or controlled — the premises where [the] injury occurred[,]" or undertook the responsibility of making the premises safe for others.  Wilson v. Tex. Parks & Wildlife Dept., 8 S.W.3d 634, 635 (Tex. 1999) (citing City of Denton v. Page, 701 S.W.2d 831, 835 (Tex. 1986)).  King presents no evidence in support of its allegation that the collision occurred "inside a plant, owned, operated, occupied and/or leased by [Albemarle.]"[38]

King's contention is in fact weakened by his own deposition testimony.  King testified that at the time of the collision he was delivering LPG to the Bigler plant, not to the Albemarle plant.[39] When King arrived at the property he was required to enter through Albemarle's "main guard house," but after checking in he was told "to proceed to Bigler."[40]  King made deliveries to the Albemarle plant when working for a prior employer, but when working for Petron, his employer at the time of this accident, he made deliveries only to the Bigler plant.[41]  King testified that Bigler

_____

[38]Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 10.

[39]See King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 90:19–93:10.

[40]Id. at 186:10–15.

[41]See id. at 56:16–57:21.

and Albemarle use different weigh stations and load stations.[42]
There is no evidence that Albemarle had any control over Bigler's
plant, its delivery process, or its safety protocols. Accordingly,
the court concludes that because a reasonable jury could not decide
that Albemarle owed King a duty to provide warnings of approaching
trains while King was delivering LPG to Bigler's plant, Albemarle
is entitled to summary judgment.

Invoking Rule 11 of the Federal Rules of Civil Procedure,
Albemarle requests that it be allowed to recover attorney's fees
and expenses related to its defense of this action because King
"never had a factual basis to support his claims of premises defect
against Albemarle" and because it was forced to file multiple
motions in an attempt to ascertain the factual basis for King's
claim.[43]   King's responses to Albemarle's summary-judgment motion,
however, adequately and nonfrivolously respond to the issues that
Albemarle raises in its motion, most of which the court did not
find relevant to the basis on which the motion is granted.
Although the court is persuaded that Albemarle has properly raised
the issue of whether it owed King a duty, the court notes that the
particular basis on which the court granted Albemarle's motion for
summary judgment – that there was no evidence of ownership – was
never specifically mentioned by Albemarle and was alluded to only

---

[42]_Id._ at 144:13-23.

[43]Albemarle Corporation's Motion for Attorney's Fees and Costs,
Docket Entry No. 54, pp. 1-4.

once in its reply.  The court concludes that under these facts Rule 11 sanctions are unwarranted and will therefore deny Albemarle's request for attorney's fees and costs.

## C. Analysis With Respect to Bigler

Bigler argues that it is entitled to summary judgment because the evidence demonstrates that Bigler "owed no duty to [King]" and "did not negligently cause [King's] injuries."[44]  Bigler also argues that there is "no evidence that Bigler was the owner, lessee, occupier, and/or operator of the premises where this incident occurred."[45]

### 1. Duty

To establish that Bigler owed a duty King must first demonstrate that Bigler owned, occupied, or controlled the premises where the injury occurred.[46]  See Wilson, 8 S.W.3d at 635.  The summary-judgment evidence shows that on the day of the accident King drove from Westlake, Louisiana, to deliver a load of LPG to the Bigler plant in Pasadena, Texas.[47]  After checking in at the

---

[44]Bigler's Motion for Summary Judgment, Docket Entry No. 70, ¶ 5.

[45]Id. ¶ 6.

[46]King argues that Bigler's summary-judgment motion should be denied as untimely, but because King has not argued or demonstrated any prejudice resulting from the delay, the court will dismiss King's argument and proceed to the merits of Bigler's motion.

[47]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 74:4-11, 90:14-25.

main gate King weighed in at Bigler's weigh station, unloaded the LPG at Bigler's load station, and was driving towards Bigler's weigh station for the second time when his truck was struck by the train.[48] The collision occurred before King exited Bigler's plant.[49]

Based on this evidence, which is the only evidence before the court concerning the ownership and control of the premises, a reasonable jury could conclude that Bigler owned, operated, or at a minimum controlled the section of the property on which the accident occurred. In Texas a premises owner owes invitees such as King a "duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known." Del Lago, 307 S.W.3d at 767.

### 2. Breach and Proximate Cause

King alleges that Bigler is negligent because it (1) failed "to maintain an adequate and/or secure premises to protect operator(s) of commercial vehicles"; (2) failed "to provide a proper person to be on the lookout for potential collisions"; (3) failed "to adequately warn of the movement of the train"; and (4) failed "to maintain a clear sightline of the railroad tracks at the crossing."[50]  Bigler argues that as a matter of law it did not

---

[48]See id. at 91:22-125:9.

[49]See id. at 125:1-25.

[50]Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 13.

breach any duty it may have owed King because King had an unobstructed view of the railroad tracks and the train and because there is no evidence that Bigler failed to make the railroad crossing safe.[51]

(a)   Whether King's View Was Obstructed

The evidence in the record directly contradicts King's allegation that he did not have a clear sightline of the railroad tracks at the crossing.   King testified that he had a clear view of the railroad tracks and the train:

Q:   And you had a clear view of the railroad tracks?

A:   Yes.   I didn't have anything — I could see — I could see the railroad tracks because of — when I stopped, I made sure I looked over both sides, then proceeded to the scales.

. . .

Q:   . . . [Y]ou could see, I guess, down the railroad tracks, all the way down south, as well as all the way up north?

A:   I could see the railroad tracks from here to there. I could see both sides.

Q:   . . . [Y]ou could see the [rail]car sitting there?

A:   Yes, I could see the [rail]car because it was the [sic] same position as when I came in.[52]

_____

[51]Bigler's Motion for Summary Judgment, Docket Entry No. 70, ¶¶ 5-6.

[52]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, pp. 121:8-122:12.

King's testimony also contradicts his allegation that the pipe rack "impaired [his] view of the tracks."[53]  The following exchange occurred during King's deposition:

> Q:  And before you crossed the railroad tracks . . . there [was] nothing blocking your view of the railroad tracks south or looking out of your right-hand window?
>
> . . .
>
> A:  No.  I didn't see — they didn't have anything blocking my view.  I could see the railcar.[54]

According to King, the pipe rack was situated on the east side of the tracks, whereas King's stopping point was on the west side of the tracks.[55]  In other words, since the pipe rack was behind the tracks, rather than in front of the tracks, it could not have obstructed King's line of sight when he was looking north and south down the tracks.

The pipe rack may very well have obstructed King's line of sight when he crossed the railroad tracks for the second time, i.e., after King unloaded the LPG and as he was repositioning his truck to weigh out.  On that occasion, King stopped on the east side of the railroad tracks and would have had to peer around the

---

[53]Plaintiff's Fourth Amended Original Complaint, Docket Entry No. 51, ¶ 10.

[54]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, p. 121:14-20.

[55]King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, p. 121:14-20.

-18-

pipe rack.[56]  Since the collision occurred on King's third trip over the tracks, however, when he was driving from west to east, a reasonable jury could not conclude that it was caused by an obstruction that only affected King's view when he was driving from east to west.

King has not raised a genuine issue of material fact in support of his allegation that an obstruction on Bigler's plant blocked his view of the railroad tracks immediately before the accident or that an obstruction caused the accident.  The court will therefore grant Bigler's summary-judgment motion with respect to King's allegation that Bigler failed to maintain a clear sightline of the railroad tracks.

> (b)   Whether Bigler Maintained a Safe Premises and Provided Adequate Warnings

Bigler does not dispute that the railroad crossing ran through its plant or that the crossing was not equipped with a crossing gate, a flagger, or any kind of automatic signal device to warn drivers about approaching trains.  Nor does Bigler dispute the evidence in the record indicating that railcars were parked on the railroad tracks near the crossing shortly before the collision.[57] For each delivery of LPG King had to cross over the railroad tracks four times.  The court cannot conclude that as a matter of law

---

[56]See id. at 122:2-12.

[57]Id. at 118:18-119:17.

Bigler fulfilled its duty to use ordinary care to reduce unreasonable risks on its premises. A reasonable jury could conclude, based on the high frequency with which trucks encountered the crossing and the evidence that railcars were sometimes parked on the tracks, that Bigler was negligent by not installing a device to warn drivers such as King that a train was moving towards the crossing.

Bigler argues that even if it was negligent for not providing adequate warnings, King's familiarity with the railroad crossing, along with the fact that he saw the train before he proceeded to cross the tracks, demonstrate that it was King's negligence, not Bigler's, that proximately caused King's injuries.[58] Proximate cause comprises two elements — cause in fact and foreseeability. Del Lago, 307 S.W.3d at 774. "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." Urena, 162 S.W.3d at 551. The foreseeability analysis is the same for both duty and proximate cause, and examines whether the defendant should have anticipated the danger created by its negligence. Clark v. Waggoner, 452 S.W.2d 437, 439-40 (Tex. 1970). King has raised fact issues as to whether Bigler's failure to warn King about the approaching train was a substantial factor in causing his injuries

---

[58]See Bigler's Motion for Summary Judgment, Docket Entry No. 70, ¶¶ 5-6.

and whether Bigler should have anticipated that such failure could lead to the type of injuries that King sustained. If Bigler had installed a warning device, the jury could find that King would not have ignored the warning and driven across the tracks in front of the train. The jury could also find that Bigler was able to anticipate the danger created by a railroad crossing running through the middle of its plant.

There is, therefore, a genuine issue of material fact as to whether Bigler was negligent by failing to maintain a safe premises and failing to warn King about the oncoming train. King's familiarity with the crossing and his awareness of the danger it presented do not relieve Bigler of its duty or release Bigler from its potential liability. The question of King's own negligence, though important to the ultimate resolution of the action, is distinct from the question of whether King has presented sufficient evidence of Bigler's negligence. See Parker v. Highland Park, Inc., 565 S.W.2d 512, 521 (Tex. 1978); Del Lago, 307 S.W.3d at 772-73 ("[A] plaintiff's knowledge of a dangerous condition is relevant to determining his comparative negligence but does not operate as a complete bar to recovery as a matter of law by relieving the defendant of its duty to reduce or eliminate the unreasonable risk of harm."). "There may be more than one proximate cause of an event." Del Lago, 307 S.W.3d at 774. If multiple parties are found negligent, it is the role of the trier

-21-

of fact to assign proportionate responsibility.  See Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a) (West 2008).

Bigler also argues that King's conduct constitutes negligence per se and thus bars him from recovery because he failed to comply with the Texas Transportation Code when he encountered the railroad crossing.[59]  Section 545.251 of the Transportation Code provides that "[a]n operator approaching a railroad grade crossing shall stop not closer than 15 feet or farther than 50 feet from the nearest rail if . . . (4) an approaching railroad train is plainly visible to the operator and is in hazardous proximity to the crossing[.]"  Tex. Transp. Code Ann. § 545.251(a)(4) (West 1999).  Such operator "shall remain stopped until permitted to proceed and it is safe to proceed."  Id. § 545.251(b).

Texas courts have held that a plaintiff's violation of this statute may bar recovery under the doctrine of negligence per se, see Kelly v. Brown, 260 S.W.3d 212, 219 (Tex. App.—Dallas 2008, pet. denied), but Bigler must conclusively demonstrate that King's conduct amounted to a violation, see Missouri-Kansas-Texas R.R. Co. v. McFerrin, 291 S.W.2d 931, 939 (Tex. 1956).  The Texas Supreme Court has held that "the common-law test of the reasonably prudent man [should be used] in determining whether, under the statute, a train was 'plainly visible' and 'in hazardous proximity'

---

[59]Bigler's Motion for Summary Judgment, Docket Entry No. 70, ¶ 5.

to a crossing." Id.;[60] see also S. Pac. Co. v. Matthews, 335 F.2d 924, 925 (5th Cir. 1964).

Here, the evidence establishes that the train was plainly visible.[61] It is less clear, however, whether a reasonably prudent person, similarly situated, should have known that the train was in "hazardous" proximity. See McFerrin, 291 S.W.2d at 940. King testified that at least one railcar was parked on the tracks and visible from the crossing when he initially drove into the plant, and that at least one railcar was parked and not moving when he crossed the tracks to weigh in and when he crossed the tracks after unloading.[62] Bigler does not present any evidence contesting these facts. In addition, there is no evidence that the train operator sounded a bell or whistle to alert King that the train was no longer parked and was moving toward the crossing. King testified that when he approached the railroad crossing he had his windows

---

[60]In McFerrin the Texas Supreme Court was interpreting a virtually identically-worded earlier version of Section 545.251 before it was recodified into the Transportation Code. See McFerrin, 291 S.W.2d at 934 (applying Act of 1947, 50th Leg., R.S., ch. 421, art. 6701d, § 86); Act of 1995, 74th Leg., ch. 165, § 1. The full text of Article 6701d, Section 86(d) is as follows: "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when . . . (d) [a]n approaching train is plainly visible and is in hazardous proximity to such crossing."

[61]See King's Deposition, Exhibit B to Albemarle's Motion for Summary Judgment, Docket Entry No. 53, p. 123:9-12.

[62]See id. at 118:18-120:10, 122:8-15, 123:5-12, 127:1-7.

-23-

down and his radios turned off, that he looked both ways, and that
he crossed the tracks after mistakenly concluding that the train
was stationary.[63]   A jury could find that King acted reasonably
under these circumstances.   In sum, King is not barred from
recovery because the evidence does not conclusively establish that
King violated Section 545.251 when he approached the crossing.

Because there are genuine issues of material fact as to the
negligence of both Bigler and King, the court will deny Bigler's
summary-judgment motion with respect to King's allegation that
Bigler negligently failed to maintain an adequate and secure
premises, that Bigler negligently failed to provide a proper person
to be on the lookout for potential collisions, and that Bigler
negligently failed to adequately warn drivers about approaching
trains.

**D.   Conclusion**

Because there is no evidence showing that Albemarle owned,
operated, or controlled the plant on which the accident occurred,
the court concludes that Albemarle is entitled to summary judgment
and that its motion to dismiss is moot.   The court further
concludes that for the reasons explained above Albemarle's request
for attorney's fees and costs should be denied.

---

[63]King's Deposition, Exhibit B to Albemarle's Motion for
Summary Judgment, Docket Entry No. 53, pp. 120:11-123:12.

-24-

Sufficient evidence exists for a reasonable jury to conclude that Bigler owned, operated, or controlled the plant at issue, and that it breached its duty to adequately warn King about dangerous conditions on its premises or to remedy the dangerous conditions. A reasonable jury could not conclude, however, that King's view of the railroad tracks or the train was obstructed.  The court will therefore grant Bigler's summary-judgment motion with respect to King's claim that Bigler negligently failed to maintain a clear sightline of the railroad tracks, and will deny the motion with respect to King's claims that Bigler negligently failed to maintain an adequate and secure premises, failed to provide a lookout person at the crossing, and failed to adequately warn King of the movement of the train.

### III.  <u>Other Motions</u>

**A.  Bigler's Motion for Leave to File and King's Motion to Strike**

Bigler moves for leave to file its original answer,[64] and King moves to strike on the basis that the answer is untimely.[65]  The court concludes that Bigler has shown excusable neglect and that King has not been prejudiced by Bigler's untimeliness. Even though it did not timely file an answer Bigler has been defending the

---

[64]Defendant Bigler L.P.'s Motion for Leave to File Original Answer and Response to Plaintiff's Motion to Strike, Docket Entry No. 84.

[65]Plaintiff's Motion in Opposition of Bigler LP's Untimely Original Answer and Motion to Strike, Docket Entry No. 82, ¶¶ 6-9.

case, evidenced by its motion for summary judgment contesting
liability, which was filed on January 7, 2011 (Docket Entry
No. 70). The court will therefore grant Bigler's motion for leave
to file and will deny King's motion to strike.

## B.  Bigler's Motion for Continuance

The court concludes that Bigler has demonstrated sufficient
cause for a continuance. The parties' Joint Pretrial Order will be
due on June 3, 2011, and Docket Call will be on June 10, 2011, at
4:00 p.m.

### IV.  Order

For the reasons explained above, Albemarle Corporation's
Motion for Summary Judgment (Docket Entry No. 53) is
**GRANTED**; Albemarle Corporation's Motion for Attorney's Fees and
Costs (Docket Entry No. 54) is **DENIED**; Defendant Albemarle
Corporation's Rule 12(b)(6) Motion to Dismiss and Answer to
Plaintiff's Fourth Amended Original Complaint (Docket Entry No. 55)
is **DENIED as moot**; Defendant Bigler LP's Traditional and No-
Evidence Motion for Summary Judgment (Docket Entry No. 70) is
**GRANTED in part and DENIED in part**; Plaintiff's Motion in
Opposition of Bigler LP's Untimely Original Answer and Motion to
Strike (Docket Entry No. 82) is **DENIED**; Defendant Bigler L.P.'s
Motion for Leave to File Original Answer and Response to
Plaintiff's Motion to Strike (Docket Entry No. 84) is **GRANTED**; and
Bigler's Motion for Continuance (Docket Entry No. 85) is **GRANTED**.

The parties' Joint Pretrial Order is due on June 3, 2011, and Docket Call will be on June 10, 2011, at 4:00 p.m. in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 20th day of April, 2011.

_____

SIM LAKE

UNITED STATES DISTRICT JUDGE